UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GEORGE K. COLBERT,

          Plaintiff,

    v.

D. LEININGER, et al.,

          Defendants.

No.  2:13-cv-0382 KJM KJN P

FINDINGS AND RECOMMENDATIONS

Plaintiff is a state prisoner, currently incarcerated at California State Prison-Sacramento ("CSP-SAC").  Plaintiff proceeds, in forma pauperis and without counsel, in this civil rights action filed pursuant to 42 U.S.C. § 1983, in which he alleges that defendant D. Leininger retaliated against him for filing an administrative grievance.  The action proceeds on plaintiff's original complaint.  Defendant's motion for summary judgment is before the court solely concerning one of plaintiff's claims, on the grounds that plaintiff failed to properly exhaust administrative remedies regarding his sexual touching claim.  Plaintiff filed an opposition, and defendant filed a reply.  For the reasons set forth below, the undersigned recommends that defendant's motion for summary judgment be granted.

////

////

////

1

I. Background

    A. Factual Allegations

Plaintiff claims that he filed grievances against defendant D. Leininger, a correctional officer, alleging sexual harassment and sexual assault.  (Complaint, ECF No. 1 at 5.)  According to plaintiff, defendant Leininger thereafter retaliated against plaintiff for filing these grievances. Plaintiff alleges that, on April 17, 2012, Leininger confiscated plaintiff's legal materials.  (Id.) Plaintiff further alleges that, on April 21, 2012, Leininger entered plaintiff's cell, touched and grabbed plaintiff's buttocks, "threaten[ed] and attempt[ed] to blackmail plaintiff for sexual extortion" (id.), and when plaintiff "refused to participate and give in to defendant['s] sexual advances, [Leininger] start[ed] telling all the inmates in plaintiff['s] housing unit that plaintiff is a rapist . . ." (id. at 7).

    B. Procedural History

This action commenced on February 26, 2013 with the filing of plaintiff's initial complaint.  (ECF No. 1)  On July 9, 2013, the court screened the complaint and found that it stated cognizable claims for First Amendment retaliation against defendant Leininger, but that it failed to state cognizable claims against Tim Virga, Warden of CSP-SAC, and Matthew Cate, former Secretary of the California Department of Corrections and Rehabilitation.  (ECF No. 9.) Plaintiff was given the option of either proceeding solely against defendant Leininger or amending his complaint to attempt to state additional claims.  Plaintiff chose the former option. Accordingly, in this action, plaintiff proceeds solely against defendant Leininger[1] on First Amendment retaliation claims.

On February 10, 2014, defendant filed a motion to dismiss based on plaintiff's alleged failure to exhaust administrative remedies regarding his claim that defendant sexually touched him.  (ECF No. 23.)  On April 16, 2014, the court denied the motion without prejudice, based on the Ninth Circuit's opinion in Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014) (en banc) (holding that defendants may no longer raise the affirmative defense of administrative exhaustion via an

---

[1] Leininger is hereinafter referred to as "Defendant."

1   unenumerated Rule 12(b) motion).  On June 13, 2014, defendant filed the instant motion for

2   summary judgment, in which defendant again contends that plaintiff failed to properly exhaust

3   administrative remedies regarding his sexual touching claim.  (ECF No. 30.)  On January 15,

4   2015, plaintiff filed an opposition to this motion.[2]  (ECF No. 44.)  On February 5, 2015,

5   defendant filed his reply.  (ECF No. 48.)

6   II.   Standards

7          A.   Legal Standard for Exhaustion of Administrative Remedies

8          The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be

9   brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a

10  prisoner confined in any jail, prison, or other correctional facility until such administrative

11  remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion

12  requirement applies to all inmate suits about prison life, whether they involve general

13  circumstances or particular episodes, and whether they allege excessive force or some other

14  wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

15         Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731,

16  741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other

17  critical procedural rules[.]"  Woodford v. Ngo, 548 U.S. 81, 90 (2006).  The Supreme Court has

18  also cautioned against reading futility or other exceptions into the statutory exhaustion

19  requirement.  See Booth, 532 U.S. at 741 n.6.  Moreover, because proper exhaustion is necessary,

20  a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise

21  procedurally defective administrative grievance or appeal.  See Woodford, 548 U.S. at 90-93.

22  "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative

23  review process in accordance with the applicable procedural rules,' [] - rules that are defined not

24  by the PLRA, but by the prison grievance process itself."  Jones v. Bock, 549 U.S. 199, 218

25  (2007) (quoting Woodford, 548 U.S. at 88).  See also Marella v. Terhune, 568 F.3d 1024, 1027

26

27  _____

    [2] Plaintiff was delayed in filing his opposition because he was housed at the Los Angeles County
    Jail for several months, a period during which his legal documents apparently remained at CSP-
28  SAC.  (See, generally, ECF Nos. 41, 42.)  Plaintiff has now returned to CSP-SAC.

3

1   (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper

2   exhaustion.'") (quoting Jones, 549 U.S. at 218).

3        In California, prisoners may appeal "any policy, decision, action, condition, or omission

4   by the department or its staff that the inmate or parolee can demonstrate as having a material

5   adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a).

6   Most appeals progress through three levels of review. See id. § 3084.7. The third level of review

7   constitutes the decision of the Secretary of the California Department of Corrections and

8   Rehabilitation and exhausts a prisoner's administrative remedies. See id. § 3084.7(d)(3). A

9   California prisoner is required to submit an inmate appeal at the appropriate level and proceed to

10  the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir.

11  2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).

12       Failure to exhaust is "an affirmative defense the defendant must plead and prove." Bock,

13  549 U.S. at 204, 216. In Albino, the Ninth Circuit agreed with the underlying panel's decision[3]

14  "that the burdens outlined in Hilao [v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996),]

15  should provide the template for the burdens here." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir.

16  2014) (en banc). A defendant need only show "that there was an available administrative remedy,

17  and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172. Once the

18  defense meets its burden, the burden shifts to the plaintiff to show that the administrative

19  remedies were unavailable. See Albino, 697 F.3d at 1030-31.

20       A prisoner may be excused from complying with the PLRA's exhaustion requirement if

21  he establishes that the existing administrative remedies were effectively unavailable to him. See

22  Albino, 747 F.3d at 1172-73. The PLRA requires that an inmate exhaust only those

23  administrative remedies "as are available." 42 U.S.C. § 1997e(a). For a remedy to be available,

24  there must be the "possibility of some relief . . . ." Booth, 532 U.S. at 738. A remedy is available

25  to inmates when it is "capable of use; at hand." Albino, 747 F.3d at 1171, quoting Brown v.

26  ───────────────
    [3]  See Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012). The three judge panel noted that "[a]

27  defendant's burden of establishing an inmate's failure to exhaust is very low." Id. at 1031.
    Relevant evidence includes statutes, regulations, and other official directives that explain the

28  scope of the administrative review process. Id. at 1032.

1    Valoff, 422 F.3d 926, 937 (9th Cir. 2006).  For example, where prison officials improperly screen

2    out inmate grievances, they render administrative remedies effectively unavailable.  Sapp v.

3    Kimbrell, 623 F.3d 813, 823, 824 (9th Cir. 2010) (To demonstrate such an exception, "the inmate

4    must establish (1) that he actually filed a grievance or grievances that, if pursued through all

5    levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue

6    in federal court, and (2) that prison officials screened his grievance or grievances for reasons

7    inconsistent with or unsupported by applicable regulations.").  See also Nunez v. Duncan, 591

8    F.3d 1217, 1226 (9th Cir. 2010) (excusing an inmate's failure to exhaust because he was

9    precluded from exhausting administrative remedies by a warden's mistaken instruction to him

10   that a particular unavailable document was needed for him to pursue his inmate appeal); Marella,

11   568 F.3d at 1024 (excusing an inmate's failure to exhaust because he did not have access to the

12   necessary grievance forms to timely file his grievance).  Plaintiff bears the burden of

13   demonstrating that the administrative remedies were rendered unavailable to him through no fault

14   of his own.  Sapp, 623 F.3d at 822-23; Nunez, 592 F.3d at 1224; Brown, 422 F.3d at 939-40.

15        Where a prison system's grievance procedures do not specify the requisite level of detail

16   for inmate appeals, Sapp, 623 F.3d at 824, a grievance satisfies the administrative exhaustion

17   requirement if it "alerts the prison to the nature of the wrong for which redress is sought."  Griffin

18   v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).  In California, "regulations require only that an

19   inmate 'describe the problem and the action requested.'"  Sapp, 623 F.3d at 824, quoting Cal.

20   Code Regs. tit. 15, § 3084.2(a).)  "A grievance need not include legal terminology or legal

21   theories unless they are in some way needed to provide notice of the harm being grieved.  A

22   grievance also need not contain every fact necessary to prove each element of an eventual legal

23   claim.  The primary purpose of a grievance is to alert the prison to a problem and facilitate its

24   resolution, not to lay groundwork for litigation."  Griffin, 557 F.3d at 1120.

25        If under the Rule 56 summary judgment standard, the court concludes that plaintiff has

26   failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice.

27   Wyatt v. Terhune, 315 F.3d 1108, 1120, overruled on other grounds by Albino, 747 F.3d 1162.

28   ////

B. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[4]

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the

---

[4]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

1    allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

2    form of affidavits, and/or admissible discovery material in support of its contention that such a

3    dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

4    must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

5    of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

6    (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

7    1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

8    a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

9    (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

10   1564, 1575 (9th Cir. 1990).

11        In the endeavor to establish the existence of a factual dispute, the opposing party need not

12   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

13   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

14   trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

15   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

16   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

17   amendments).

18        In resolving a summary judgment motion, the court examines the pleadings, depositions,

19   answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

20   Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

21   255.  All reasonable inferences that may be drawn from the facts placed before the court must be

22   drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences

23   are not drawn out of the air, and it is the opposing party's obligation to produce a factual

24   predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.

25   Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

26   demonstrate a genuine issue, the opposing party "must do more than simply show that there is

27   some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

28   not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

1 | trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

2 |      By contemporaneous notice provided on May 30, 2014, (ECF No. 63-1), plaintiff was

3 | advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal

4 | Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc);

5 | Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

6 | III.  Undisputed Facts[5]

7 |      For purposes of the instant motion for summary judgment, the court finds the following

8 | facts undisputed.  Documents submitted as exhibits are considered to the extent they are relevant,

9 | and despite the fact that they are not authenticated because such documents could be admissible at

10 | trial if authenticated.

11 |     1.  Plaintiff is an inmate in the custody of the California Department of Corrections and

12 | Rehabilitation ("CDCR").   (Defendant's Statement of Undisputed Facts ("DSUF") 1, ECF

13 | No. 48-1.)

14 |     2.  Plaintiff has been housed at CSP-SAC, also known as "New Folsom," in Represa,

15 | California, since September 2010.  (DSUF 5.)

16 |     3.  Defendant works at CSP-SAC as a correctional officer.  (DSUF 6.)

17 |     4.  Plaintiff alleges in his complaint that on April 17, 2012, defendant searched plaintiff's

18 | cell and confiscated plaintiff's legal materials in response to plaintiff filing grievances for sexual

19 | harassment and assault against defendant.  (DSUF 3.)

20 | ////

21 |

---

[5] A number of the purported facts presented by defendant in support of his motion are actually statements of law.  As such, they are neither set forth nor addressed in this section.  For example, defendant asserts that the following is an undisputed  fact: "An appeal may be rejected or 'screened out' pursuant to Cal. Code Regs. tit. 15, § 3084.6(b), or canceled pursuant to Cal. Code Regs. tit. 15, § 3084.6(c), as determined by the Appeals Coordinator." (ECF No. 48-1 at 5.)  This is a statement of law, not a material fact.  Under the court's Local Rules, the party moving for summary judgment is required to "enumerate discretely each of the specific material facts relied upon in support of the motion . . . ."  Local R. 156(a).  Material facts are those "that might affect the outcome of the suit under the governing law . . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The California regulations which address exhaustion of administrative remedies by inmates comprise part of the "governing law" in this matter, and as such, are neither subject to an evidentiary showing nor are properly the subject of dispute between the parties.

5.  Plaintiff alleges in the complaint that on April 21, 2012, defendant came into his cell, physically touched and grabbed plaintiff's buttocks in a sexual manner, threatened him, and attempted to blackmail him for sexual extortion with copies of his central file.  (DSUF 4.)

6.  Plaintiff knew about and frequently utilized the administrative grievance process while at CSP-SAC.  (DSUF 25.)

7.  Plaintiff submitted thirty-four appeals between April 21, 2012, when the alleged sexual touching occurred, and February 26, 2013, when he filed this lawsuit.  (DSUF 26.)

8.  In Appeal Log No. SAC-12-1047, plaintiff alleged that on April 21, 2012, defendant called him a child rapist in front of other inmates.  (DSUF 28.)

9.  In Appeal Log No. SAC-12-01047, plaintiff alleged that on April 21, 2012, defendant threatened to copy plaintiff's case documents and use them as blackmail.  (DSUF 29.)

10.  Appeal Log No. SAC-12-01047 was partially granted at the first level of review. (DSUF 31.)

11.  Plaintiff sought second level review of Appeal Log No. SAC-12-01047.  (DSUF 32.)

12.  Appeal Log No. SAC-12-01047 was partially granted at the second level of review. (DSUF 33.)

13.  Plaintiff sought third level review of Appeal Log No. SAC-12-01047.  (DSUF 34.)

14.  Appeal Log No. SAC-12-01047 received a third level decision on October 16, 2012. (DSUF 35.)

15.  In Appeal Log No. SAC-12-01340, plaintiff claimed that staff disrespected him in front of other inmates by discussing his commitment offense/case factors.  (DSUF 36.)

16.  In Appeal Log No. SAC-12-01340, Plaintiff claimed that staff inappropriately went through his C-File, legal work, and searched his cell.  (DSUF 37.)

17.  Appeal Log No. SAC-12-01340 was cancelled at the first level because it was duplicative of Appeal Log No. SAC-12-01047.  (DSUF 38.)

18.  In Appeal Log No. SAC-12-01537, plaintiff claimed that a registered television in his cell was not put on his main Inventory Worksheet when he was sent to administrative segregation on 4/21/2012.  (DSUF 39.)

9

19.   In Appeal Log No. SAC-12-01537, plaintiff claimed he sent a request to staff about the television in his cell, but received no response.  (DSUF 40.)

20.   Appeal Log No. SAC-12-01537 was screened out at the first level.  (DSUF 41.)

21.   Appeal Log No. SAC-12-01734 involved plaintiff's request that someone protect him from other correctional officers, and that there be an investigation into why he was forced to stay under the control of an officer who had been violating state law since 2008 by reading his C-File out loud to staff and other inmates, taking personal photos of his cell, and making unwanted sexual advances towards him.  (DSUF 42.)

22.   Appeal Log No. SAC-12-01734 was screened out at the first level because it involved multiple issues that did not derive from a single event, were not directly related, and as a result, could not reasonably be addressed in a single response.  (DSUF 43.)

23.   Appeal Log No. SAC-12-01768 addressed safety issues and cancelled Appeal Log No. SAC-12-01340.  (DSUF 44.)

24.   Appeal Log No. SAC-12-01768 was screened out at the first level on June 14, 2012, because Appeal Log No. SAC-12-01047 had already completed first level review.  (DSUF 45.)

25.   In Appeal Log No. SAC-12-01864, plaintiff requested that Appeal Log No. SAC-12-01047 be processed.  (DSUF 46.)

26.   Appeal Log No. SAC-12-01864 was cancelled at the first level on June 21, 2013, because it was duplicative of Appeal Log No. SAC-12-01047, which already had been assigned for second level review.  (DSUF 47.)

27.   There is no record of plaintiff appealing, let alone successfully, the cancellation of Appeal Log No. SAC-12-01864 between April 17, 2012, and February 26, 2013.   (DSUF 55)

28.   In Appeal Log No. SAC-12-02094, plaintiff claimed that on April 21, 2012, staff tried to blackmail him in an attempt to extort sexual control over him.  (DSUF 48.)

29.   In Appeal Log No. SAC-12-02094, Plaintiff claimed that staff told him it was time he gives in while staff performed a sexual "gyrate" motion.  (DSUF 49.)

30. Appeal Log No. SAC-12-02094 was cancelled at the first level because it was duplicative of Appeal Log No. SAC-12-01734.  (DSUF 50.)

1        31.  There is no record of plaintiff appealing, let alone successfully, the cancellation of

2    Appeal Log No. SAC-12-02094 between April 17, 2012, and February 26, 2013.  (DSUF 54.)

3        32. The Office of Appeals received and adjudicated eight appeals by plaintiff at the third

4    level of review between April 17, 2012, and February 26, 2013.  (DSUF 51, 52.)

5        33.  Plaintiff filed this lawsuit on February 26, 2013.  (DSUF 2.)

6    IV.  Analysis

7        In his complaint, plaintiff alleges as follows:

8            On 4-17-2012, [defendant] Correctional Officer D. Leininger
             confiscated my legal material in retaliation for me filing sexual
9            harassment and sexual assault against him.  The material was a
             federal lawsuit, a complaint filed with the Office of Internal Affairs,
10           along with a complaint to the Warden . . . and the Director of
             Corrections . . . .  [Defendant] came back to my cell on 4-21-2012,
11           physically touching and grabbing my buttocks, threaten and
             attempting to blackmail me for sexual extortion.
12

13   (ECF No. 1 at 5.)

14           When plaintiff refused to participate and give in to defendant D.
             Leininger sexual advances, defendant D. Leininger started telling
15           all the inmates in plaintiff housing units that plaintiff is a rapist and
             should be assaulted.
16

17   (ECF No. 1 at 7.)

18       Defendant moves for summary judgment on the issue of whether plaintiff exhausted

19   administrative remedies regarding his claim that, on April 21, 2012, defendant was "physically

20   touching and grabbing [plaintiff's] buttocks . . . ."[6]  In support of this motion, defendant sets forth

21   as his thirtieth undisputed fact:  "Nowhere in Appeal Log No. SAC-12-01047 does [p]laintiff

22   allege that [defendant] sexually touched him on April 21, 2012 in retaliation for filing

23   grievances."  (ECF No. 48-1 at 8-9.)

24       Plaintiff disputes this fact on the grounds that Appeal Log Nos. SAC-12-01047, SAC-12-

25   01796, and SAC-12-02884 were all "part of one incident."  (ECF No. 44 at 2.)

26   _____

27   [6] There appears to be no question – and defendant does not contend – that plaintiff fully
     exhausted administrative remedies as to his claims that defendant retaliated against plaintiff by
     "threaten[ing] and attempting to blackmail [plaintiff] for sexual extortion," including the act of
28   describing him as a child rapist in front of others.

11

It is evident that the initial CDC Form 602 filed by plaintiff as part of Appeal Log No. SAC-12-01047 does not include an allegation that defendant sexually touched plaintiff on April 21, 2012, whether for retaliatory purposes or otherwise.  The Form 602 provides in pertinent part:

> On 4-21-2012, [defendant] C/O Leininger stated on the tier, in front of workers and inmates in their cell, that I wont be nice to him, my file said child rapist.

(ECF No. 30-4 at 14.)

> For a correctional officer to go through prisoners C-File, or search their cell, and go through their legal work or case documents and zerox (make copies) and threaten to blackmail the man, unless he be real nice to said C/O or his chosen inmates . . . .  I can no longer stay at Folsom, my life is now in danger for not giving in, and the administration is not doing their job.

(ECF No. 30-4 at 16.)  Plaintiff's objections to the first level and second level responses are similarly devoid of references to defendant sexually touching him on April 21, 2012.  While plaintiff alleges in these objections that defendant was "sex playing" him, and that when defendant "search[ed] me, he would also grope me, or make sexual comments, along with touching my hands during tray pick up," these incidents are alleged to have occurred in the past, and to have served as the basis for one or more prior administrative grievances filed by plaintiff against defendant.  (ECF No. 30-4 at 17.)  In other words, Appeal Log No. SAC-12-01047 does not set forth any allegations that defendant sexually touched plaintiff on April 21, 2012.

The court has reviewed the complete file for Appeal Log Nos. SAC-12-01796 (ECF No. 30-4 at 26-47) and SAC-12-02884 (ECF No. 30-5 at 30-49, ECF No. 30-6 at 1-4), the two Appeals cited by plaintiff as being "part of one incident" and the basis of his dispute as to whether he exhausted administrative remedies regarding the alleged touching.  On review, the court finds no allegation therein that defendant sexually touched plaintiff on April 21, 2012.  There is, in fact, only one reference to sexual touching.  The Form 602 filed by plaintiff in connection with Appeal Log. No. SAC-12-02884, dated September 4, 2012, provides in pertinent part:

1          Lt. O'Brien, call me into A-5-Rotunda, and assemble around nine to
2    eleven correctional officers and had two inmates in the holding
     cage and started asking me how [defendant] Leininger like having
3    sex through the tray slots and then have me explain why
     [defendant] Leininger wrote the phony 115 Rules Violation Report,
4    to cover up his fail sex extortion.  All the C/O's and inmates was
     laughing.  I told him the . . . investigative employee was standing
5    beside the 115 writer and his business partner on the job.  There
     never was a fair and impartial decision-maker in the hearing.  The
6    I.E., stated he wasn't to question no inmates witnesses'
     investigation of Title 15 C.C.R. 3318(A), told me, he couldn't
7    interview himself, so I am screwed.  The senior hearing officer
     heard the R.V.R. 115 only to humiliate me and to further victimize
8    me in front of an audience.  Nobody who had information about the
     incident should be the investigative employee.

9

10   (ECF No. 30-5 at 36.)  Plaintiff therein seeks, as remedies, expungement of the referenced Rules

11   Violation Report, an investigation, and a "fair hearing."  (Id.)  This Appeal appears to challenge

12   the procedures under which plaintiff was found guilty of a rules violation, rather than defendant's

13   treatment of plaintiff.  Moreover, the sexual touching that is referenced is "sex through the tray

14   slots," not the touching or grabbing of plaintiff's buttocks.  Further, there is no reference to the

15   date on which the alleged sexual act occurred.  Ultimately, to the extent that plaintiff means to

16   argue, through his objections, that this Form 602 supports a claim that defendant inappropriately

17   touched plaintiff's buttocks, the court is unconvinced.  The content of this Form 602 simply fails

18   to "alert[] the prison to the nature of the wrong for which redress is sought."  Griffin, 557 F.3d at

19   1120.

20        The court therefore finds undisputed defendant's thirtieth fact submitted in support of his

21   motion:  "Nowhere in Appeal Log No. SAC-12-01047 does [p]laintiff allege that [defendant]

22   sexually touched him on April 21, 2012 in retaliation for filing grievances."  (ECF No. 48-1 at 8-

23   9.)

24        Out of an abundance of caution, the court has reviewed the allegations made by plaintiff

25   in each of the other five Appeals that the parties agree plaintiff fully exhausted to the third level

26   of review.  In none of these Appeals does the court find an allegation that defendant touched

27   plaintiff in a sexual manner on April 21, 2012.  Accordingly, the court finds that defendant's

28   fifty-third fact submitted in support of the instant motion – "None of the eight appeals that were

1  received and adjudicated by the Office of Appeals between April 17, 2012 and February 26,

2  2013, addressed sexual touching by Leininger" (ECF No. 48-1 at 14) — is also undisputed.

3      In summary, it appears that plaintiff failed to exhaust administrative remedies regarding

4  his claim that, on April 21, 2012, defendant touched and/or grabbed plaintiff's buttocks in

5  retaliation for plaintiff's filing of complaints against defendant.  Summary judgment should

6  therefore be granted to defendant regarding this claim.

7  V.  Recommendations

8      Accordingly, IT IS HEREBY RECOMMENDED that defendant's motion for summary

9  judgment (ECF No. 30) be granted.

10     These findings and recommendations are submitted to the United States District Judge

11 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

12 after being served with these findings and recommendations, any party may file written

13 objections with the court and serve a copy on all parties.  Such a document should be captioned

14 "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

15 objections shall be served and filed within fourteen days after service of the objections.  The

16 parties are advised that failure to file objections within the specified time may waive the right to

17 appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18 Dated:  February 13, 2015

19

20 _____
   KENDALL J. NEWMAN
21 UNITED STATES MAGISTRATE JUDGE

/colb0382.msj.fte

22

23

24

25

26

27

28